**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEROME STONE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AGNICO-EAGLE MINES LTD, SEAN BOYD, EBERHARD SCHERKUS, AMMAR AL-JOUNDI, and DAVID GAROFALO,<br><br>Defendants. | ) Case No: 1:11-cv-07968-JPO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| CHRIS HASTINGS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AGNICO-EAGLE MINES LTD, SEAN BOYD, EBERHARD SCHERKUS, AMMAR AL-JOUNDI, and DAVID GAROFALO,<br><br>Defendants. | ) Case No: 1:11-cv-08466-JPO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ROBERT LACEY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

Movant Robert Lacey ("Plaintiff" or "Movant") respectfully submits this memorandum in support of his motion for consolidation, for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of his selection of the law firm of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class and The Law Offices of Curtis V. Trinko, LLP ("Trinko") to serve as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

Presently pending in this District are two related class action lawsuits[1] (the "Actions") brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Agnico-Eagle Mines LTD ("Agnico-Eagle" or the "Company") between April 29, 2010 and October 19, 2011, inclusive (the "Class Period"). These Actions are brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. Defendants named in these actions include Agnico-Eagle and certain of its officers and/or directors.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii). The Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a) (consolidation is appropriate where there is a common issue of law or fact). Each action names Agnico-Eagle as a Defendant, and alleges essentially the same wrongdoing;

---

[1] The actions are: *Stone v. Agnico-Eagle Mines LTD, et al.,* 1:11-cv-07968-JPO; and *Hastings v. Agnico-Eagle Mines LTD, et al.*, 1:11-cv-08466-JPO. The actions are on behalf of all persons who purchased or otherwise acquired Agnico-Eagle securities during the period between April 29, 2010 and October 19, 2011, inclusive (the "Class Period").

namely, that Agnico-Eagle issued materially false and misleading statements during the Class

Period, thereby causing the price of its securities to be artificially inflated.

After consolidating related actions, the PSLRA directs the Court to appoint as Lead

Plaintiff the movant that has demonstrated the "largest financial interest in the litigation" and

also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23.  *See* 15 U.S.C. 78u-

4(a)(3)(B)(iii).  As demonstrated herein, Movant has sustained losses totaling $47,872.[2]

Movant's losses are believed to be the largest among purported class members seeking

appointment as Lead Plaintiff.[3]  Movant is unaware of any other class member that has filed an

action or an application for appointment as Lead Plaintiff that has sustained greater financial

losses.[4]  Furthermore, Movant understands the commitments of a Lead Plaintiff and, as

demonstrated herein, satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure.  In addition, Movant has retained competent and experienced counsel to prosecute

this securities litigation and seeks the Court's approval of his selection of Counsel.  Accordingly,

under the PSLRA, Mr. Lacey is presumptively the most adequate plaintiff and is entitled to

appointment as the Lead Plaintiff for the class.

Pursuant to the PSLRA, the Lead Plaintiff—subject to Court approval—is entitled to

select lead counsel for the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Here, Movant has selected

the law firm of Saxena White to serve as Lead Counsel and Trinko to serve as Liaison Counsel.

---

[2] The losses suffered by Movant are not the same as his legally compensable damages, the measure of which is often a complex legal question that cannot be determined at this stage of litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B), and based upon reference to information concerning the current market for the Company's securities.

[3] The transactions of Mr. Lacey in Agnico-Eagle securities during the Class Period are set forth in the certification attached to the Declaration of Christopher S. Jones ("Jones Decl.") as Exhibit B.

[4] A chart setting forth Mr. Lacey's losses is attached as Exhibit C to the Jones Decl.

Saxena White has extensive experience successfully litigating securities class actions and possesses the resources necessary to vigorously pursue this litigation on behalf of the class.  For the reasons summarized herein and discussed more fully below, Movant's motion should be approved in its entirety.

## PROCEDURAL HISTORY

On November 07, 2011 and November 22, 2011, two similar class actions were filed on behalf of all other persons who purchased or otherwise acquired Agnico-Eagle securities during the Class Period: *Stone v. Agnico-Eagle Mines LTD, et al.,* Case No. 1:11-cv-07968-JPO (S.D.N.Y. November 07, 2011); and *Hastings v. Agnico-Eagle Mines LTD, et al*., Case No. 1:11-cv-08466-JPO (S.D.N.Y. November 22, 2011).

The complaints alleged that Agnico-Eagle and certain officers and directors of the Company (collectively, the "Defendants") violated §§10(b) and 20(a) of the Exchange Act, as amended by the PSLRA, and Rule 10b-5 promulgated thereunder.  On November 7, 2011, following the filing of the first-filed action in the Southern District of New York and pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first notice that a class action had been initiated against the Defendants was published on *Market Wire*, a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as Lead Plaintiff.  Mr. Lacey timely filed this motion within the 60-day period following publication of the November 07, 2011 notice.

## STATEMENT OF FACTS[5]

Defendant Agnico-Eagle is a Canadian corporation with its principal executive offices located at 145 King Street East, Suite 400, Toronto, ON M5C 2Y7.  ¶11.  Agnico-Eagle engages

---

[5] These facts were derived from the allegations contained in the class action styled as *Stone v. Agnico-Eagle Mines LTD, et al.,* Case No. 1:11-cv-07968-JPO (S.D.N.Y. November 07, 2011).

in the exploration, development, and production of mineral properties in Canada, Finland, and Mexico.  The Company primarily explores for gold, as well as silver, copper, zinc, and lead. Agnico-Eagle's flagship properties include the LaRonde mine located in the southern portion of the Abitibi volcanic belt, Canada.  ¶2.

The *Stone* complaint alleges that Defendants' statements and filings during the Class Period were materially false and misleading because they failed to disclose and misrepresented that the Goldex Mine—one of the Company's most important sources of revenue,  was responsible for 19% of Agnico-Eagle's entire gold production for 2010—and was experiencing significant structural problems that would eventually require the closing of the mine in October 2011.  ¶51.  As a result, the Company's financial statements were false and misleading at all relevant times.  ¶52.

Defendants' wrongful acts, and false and misleading statements and omissions, have caused a precipitous decline in the market value of the Company's stock.  Plaintiff and the other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The Actions involve class action claims on behalf of the purchasers of Agnico-Eagle securities and assert essentially identical and overlapping class claims.  Consolidation is appropriate where there is "a common question of law or fact pending before the Court."  Fed. R. Civ. P. 42(a); *see Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. N.Y. 1990).  The test is met here and the Actions should be consolidated.

The Actions present substantially identical factual and legal issues, including: (a) whether the Defendants violated the federal securities laws; (b) whether the Company's public statements

4

during the Class Period omitted and/or misrepresented material facts; (c) whether Defendants

participated in and pursued the fraudulent scheme or course of business complained of in the

Actions; (d) whether Defendants acted willfully, knowingly or recklessly, in omitting and/or

misrepresenting material facts; (e) whether the market prices of Agnico-Eagle securities during

the Class Period were artificially inflated due to the alleged material nondisclosures and/or

misrepresentations; and (f) whether the members of the proposed class have sustained damages

when corrective disclosures removed the inflation caused by Defendants' fraud, and, if so, what

is the appropriate measure of damages.

Class action shareholder suits are ideally suited for consolidation because their

unification expedites pretrial proceedings, reduces case duplication, avoids the harassment of

parties and witnesses being interrogated in multiple proceedings, and minimizes the expenditure

of time and money by all persons concerned.  *See Primavera, Familienstiftung v. Askin,* 173

F.R.D. 115, 130 (S.D.N.Y. 1997); *Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 501-02

(S.D. Fla. 2002).  Moreover, "'[d]irecting discovery to one complaint…avoids the possible

confusion and possible problems stemming from the situation where each plaintiff pursues his

individual complaint.'"  *Pearlman v. Cablevision Sys. Corp,*. 2011 U.S. Dist. LEXIS 10008, at

*4 (E.D.N.Y. Feb 1, 2011) (quoting *Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354,

1359-60 (2d Cir. 1975)).

Here, the Actions assert essentially the same claims on behalf of Agnico-Eagle against

substantially the same Defendants.  Consolidation of the Actions, therefore, is necessary and

appropriate and will serve to promote the efficient litigation of this matter.  As such, Movant

respectfully urges the Court to consolidate the Actions.

## II.     MR. LACEY SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure that governs the appointment of a lead

plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class

action pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1) and

(a)(3)(B)(i). Specifically, the PSLRA provides that, within 20 days after the date on which a

class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be

published, in a widely circulated national business-oriented publication or wire service, a notice

advising members of the purported plaintiff class:

(I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as Lead Plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or

purported class members to serve as Lead Plaintiff in response to any such notice within 60 days

after the date of publication of the notice, or as soon as practicable after the Court decides any

pending motions to consolidate any actions asserting substantially the same claim or claims.

Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that

such plaintiff is the person, or group of persons, which:

(aa)    has either filed the complaint or made a motion in response to a notice…

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I).  *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) (Sweet, J.).

As discussed below, Mr. Lacey has complied with the procedural prerequisites of the PSLRA.  Moreover, Mr. Lacey believes that he has the largest financial interest in the litigation, and otherwise meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.

### B.      Mr. Lacey is "The Most Adequate Plaintiff"

#### 1.      Movant Has Timely Submitted His Lead Plaintiff Motion

Under the deadlines established by the PSLRA, any class members interested in moving for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of publication of the notice of the first filed action, or January 6, 2012.  15 U.S.C. §78u-4(a)(3)(A) and (B).  Because this motion is filed within the requisite time frame after publication of the notice, Mr. Lacey's motion is timely.

#### 2.      Movant has the Largest Financial Interest Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall presume that the most adequate plaintiff is the "person or group of persons" that represent(s) the largest financial interest in the relief sought by the action and who also meets the requirements of Rule 23.

During the Class Period, Mr. Lacey purchased 1,689 shares of Agnico-Eagle securities at prices artificially inflated by the materially false and misleading statements issued by Defendants.  *See* Jones Decl., Exhibit B.  In addition, Movant incurred a substantial loss of approximately $47,872 on his transactions in Agnico-Eagle securities when corrective disclosures removed the inflation caused by the Defendants' fraud.

7

In evaluating financial interest, courts generally analyze four factors—referred to as the

"*Lax* Factors"[6]—to determine financial interest.  The *Lax* Factors include: (i) the number of

gross shares purchased during the class period; (ii) the number of net shares purchased during the

class period; (iii) the total net funds expended during the class period; and (iv) the approximate

loss suffered.  *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005).  In

light of each of these factors, Mr. Lacey's financial interest is as follows:

| Total Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|
| 1,689 | 1,689 | $118,607.58 | $47,872 |

As demonstrated herein, Mr. Lacey believes that he has the largest financial interest in

this case.

### 3.     Movant is Otherwise Qualified Under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the

Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

Civil Procedure" in order to be the presumptively most adequate plaintiff.  15 U.S.C. §78u-

4(a)(3)(B).  To this end, Rule 23(a) provides that a party may serve as a class representative only

if the following four requirements are satisfied: (1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[6] *See Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug 11, 1997).

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the lead plaintiff analysis.  Consequently, in deciding the motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.  As detailed below, Mr. Lacey satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### a.      Movant's Claims are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  Typicality does not require that there be no factual differences between the class representatives and the other class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical.  *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to be typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim.").  Indeed, the requirement that the proposed class representatives' claims be typical of the claims  of other class members does not mean that the claims need be identical.  *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.

Mr. Lacey seeks to represent a class of purchasers of Agnico-Eagle securities that have identical, non-competing and non-conflicting interests.  Mr. Lacey satisfies the typicality requirement because, just like all other class members, he: (1) purchased or acquired Agnico-

9

Eagle securities during the Class Period; (2) at prices artificially inflated by the Company's

materially false and misleading statements and/or omissions; and (3) suffered damages when

corrective disclosures removed the inflation caused by the Defendants' fraud.  Thus, Movant's

claims are typical of those of other class members since his claims arise out of the same course

of events.

### b.      Mr. Lacey Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the

interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy

of the movant to: (1) whether there are any conflicts between the interests of the movant and the

members of the Class; (2) whether the movant is an adequate representative of the Class; (3)

whether the interests of the movant are clearly aligned with the members of the putative Class;

and (4) whether there is evidence of any antagonism between their respective interests.  *See* 15

U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.

Here, Mr. Lacey will more than adequately represent the interests of the class.  First, Mr.

Lacey's interests are clearly aligned with the interests of the other members of the proposed class

and there is no antagonism or conflict whatsoever between his interests and the interests of the

other class members.  Second, Mr. Lacey shares common questions of law and fact with the

other members of the Class and his claims are typical of the other class members.   As evidenced

by the injury suffered by Movant, who acquired 1,689 shares of Agnico-Eagle securities at prices

artificially inflated by the Company's materially false and misleading statements, Movant's

interests are clearly aligned with the interests of the other members of the Class.

Furthermore, Mr. Lacey has already taken significant steps demonstrating his willingness

to protect the interests of the Class: (a) Movant has executed a sworn certification detailing his

Class Period transactions (*See* Jones Decl., Exhibit B); (b) Movant has expressed his willingness to serve as Lead Plaintiff in this action (*See* Jones Decl., Exhibit B); (c) Mr. Lacey timely moved the Court to be appointed as Lead Plaintiff; and (d) Movant has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the class. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).

Thus, Mr. Lacey, in addition to having the largest financial interest, also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Therefore, Movant satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## III.    THE COURT SHOULD APPROVE MR. LACEY'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Moreover, the Court should not disturb the Lead Plaintiff's choice of counsel unless such action is  "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the other class members).

In that regard, Movant has selected the law firm of Saxena White to serve as Lead Counsel to pursue this litigation on his behalf and on behalf of the class, and he has selected Trinko to serve as Liaison Counsel.  As mentioned above, Saxena White possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities

11

fraud class actions on behalf of injured investors.  As demonstrated by its firm resume, Saxena

White has been appointed as Lead or Lead Counsel in landmark, precedent-setting class actions.

*See* Jones Decl., Exhibit D.

In terms of benefits conferred to Saxena White's clients, the firm has achieved

resounding successes on behalf of shareholders nationwide.  For instance, acting as sole Class

Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval

from the Northern District of Illinois of a $53.3 million settlement for shareholders that also

included significant reforms to the company's internal control policies.  *See Central Laborers'*

*Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007).  Recently,

Saxena White gained final approval from the Southern District of New York of a $27 million

settlement for shareholders in a securities fraud action against Sadia, S.A.  *See In re Sadia S.A.*

*Securities Litigation*, No. 08-cv-9528-SAS (S.D.N.Y. December 28, 2011) (J. Scheindlin).[7]

In addition, courts throughout the country have recognized that Saxena White has the

experience and resources to successfully and efficiently prosecute complex class litigation as

Lead and Co-Lead Counsel.  For example, the Honorable Judge Jed S. Rakoff, a noted jurist in

the Southern District of New York, recognized that Saxena White had performed "excellent

work" in this "important case" on behalf of all Merrill Lynch shareholders worldwide.  *In re*

*Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR)

---

[7] [7] Similarly, the Southern District of New York recently granted final approval of a $9,000,000 settlement in which Saxena White served as sole Class Counsel.  *Hayes v. Harmony Gold Mining Co. Ltd.*, No. 08-civ-3653-BSJ (S.D.N.Y. November 10, 2011).  The Western District of Texas, El Paso Division, granted final approval of a $4,500,000 securities fraud class action settlement in which Saxena White served as sole Class Counsel.  *See In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008).  The Eastern District of Texas, Sherman Division, also granted final approval of a $3,000,000 settlement in which Saxena White served as Co-Class Counsel.  *See PLA, LLC v. Advanced Neuromodulation Systems, Inc., et al.*, No. 4:05-CV-00078 (E.D. Tex. March 21, 2007).

(S.D.N.Y. Jan. 20, 2009).  The Honorable William S. Duffey, Jr. of the Northern District of

Georgia, noted that Saxena White's lawyers acted with "dignity and respect," produced "well-

done pleadings," were "thorough [and] insightful," and "fight[] as hard but as honestly and

professionally as they can for the interest of their clients."  *In re Freidman's Sec. Litig.*, 1:03-

CV-3475-WSD (N.D. Ga. Feb. 5, 2009).

Additionally, Saxena White is currently serving as Lead and Co-Lead Counsel in two of

the most significant derivative cases in the nation, *In re Goldman Sachs Group, Inc. Derivative*

*Litigation*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), and *In re Bank of America Corp.*

*Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.).  In *Goldman Sachs*,

Judge Crotty appointed Saxena White as sole Lead Counsel amongst numerous firms, and

specifically noted that "***Saxena White is well qualified to play its role as lead counsel.  The***

***pleadings it filed in this matter, including the motion papers, are competent and professional.***"

Further, in *Bank of America*, Saxena White was appointed as Co-Lead Counsel, with Judge Chin

expressly noting that ***Saxena White is "experienced and qualified to serve as lead counsel."***

Mr. Lacey has also selected Trinko to serve as Liaison Counsel.  Trinko has extensive

experience prosecuting complex litigation, including securities fraud class actions, and will serve

to facilitate the litigation on a local level.  *See* Jones Decl., Exhibit E.  Moreover, Saxena White

and Trinko have extensive experience cooperatively litigating complex securities fraud class

actions and derivative actions in this Court.[8]  Because there is nothing to suggest that Mr. Lacey

or his counsel will not fairly and adequately represent the Class, or that Mr. Lacey is subject to

unique defenses—which is the *only* evidence that can rebut the presumption of inadequacy under

---

[8] *See*, *e.g.*, *In re Sadia S.A. Securities Litigation*, No. 08-cv-9528-SAS (S.D.N.Y.); *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.).

the PSLRA—this Court should appoint Mr. Lacey as Lead Plaintiff and approve his selection of

Saxena White as Lead Counsel and Trinko as Liaison Counsel for the proposed Class.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Mr. Lacey respectfully requests that this Court: (1)

consolidate the Actions pursuant to Fed. R. Civ. P. 42(a); (2) appoint Mr. Lacey as Lead Plaintiff

pursuant to §21D(a)(3)(B); and (3) approve Movant's selection of Saxena White as Lead

Counsel and Trinko as Liaison Counsel.


Dated:  January 6, 2012                                      By: */s/ Curtis V. Trinko*

**LAW OFFICES OF**
**CURTIS V. TRINKO, LLP**
Curtis V. Trinko (CT-1838)
Jennifer Traystman (JT-7583)
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: 212 490-9550
Fax: 212 986-0158
Email: Ctrinko@trinko.com

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White III
Christopher S. Jones (CJ-4131)
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Attorneys for Plaintiff*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of January, 2012, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Curtis V. Trinko*
Curtis V. Trinko