UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
JEROME STONE, Individually and On Behalf : Civil Action No. 1:11-cv-07968-JPO
of All Others Similarly Situated, :
 :
              Plaintiff, :
 :
  vs. :
 :
AGNICO-EAGLE MINES LTD, SEAN :
BOYD, EBERHARD SCHERKUS, AMMAR :
AL-JOUNDI, and DAVID GAROFALO, :
 :
              Defendants. :
----------------------------------------x
CHRIS HASTINGS, Individually and On : Civil Action No. 1:11-cv-08466-JPO
Behalf of All Others Similarly Situated, :
 :
              Plaintiff, :
 :
  vs. :
 :
AGNICO-EAGLE MINES LTD, SEAN :
BOYD, EBERHARD SCHERKUS, AMMAR :
AL-JOUNDI, and DAVID GAROFALO, :
 :
              Defendants. :
----------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CITY OF BROCKTON
RETIREMENT SYSTEM FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION
<u>OF LEAD COUNSEL</u>**

I.  **PRELIMINARY STATEMENT**

Presently pending before this Court are two class action lawsuits (the "Actions") brought on behalf of purchasers of Agnico-Eagle Mines Limited ("Agnico-Eagle Mines" or the "Company") securities between March 26, 2010 and October 19, 2011, inclusive (the "Class Period"), which allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Proposed lead plaintiff City of Brockton Retirement System (the "City of Brockton") hereby moves this Court for an Order:  (i) consolidating the related Actions pursuant to Federal Rules of Civil Procedure 42(a); (ii) appointing it as Lead Plaintiff in the Actions pursuant to the PSLRA; and (iii) approving its selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that the Actions pending before this Court involve common questions of law and fact, rendering consolidation appropriate.  Further, the City of Brockton is the most adequate plaintiff as defined by the PSLRA because it possesses a significant financial interest in these Actions, *see* Rosenfeld Decl. Ex. B,[1] and it otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

---

[1]  References to the "Rosenfeld Decl., Ex. ___ " are to the exhibits attached to the accompanying Declaration of David A. Rosenfeld in Support of Motion of City of Brockton Retirement System for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, dated January 6, 2012, and submitted herewith.

Accordingly, the City of Brockton should be appointed Lead Plaintiff, and its selection of Lead Counsel should be approved.

## II. FACTUAL BACKGROUND

Agnico-Eagle Mines is a Canadian-based international gold producer with mining operations in northwestern Quebec, northern Mexico, northern Finland and Nunavut and exploration activities in Canada, Europe, Latin America and the United States. The Company's operating history includes over three decades of continuous gold production primarily from underground operations. Since its formation on June 1, 1972, the Company has produced almost 6.5 million ounces of gold.

According to the Company's 2010 Annual Report filed on Form 20-F with the SEC on March 28, 2011, Agnico-Eagle Mines' strategy is to focus on the continued exploration, development and expansion of its properties, all of which are located in politically stable jurisdictions. The Company has spent approximately $2.2 billion on the development of five new mines over the last four years. Through this development program, the Company transformed itself from a regionally focused, single mine producer to a multi-mine international gold producer with six operating, 100% owned mines.

The Company operates through four segments: Canada, Europe, Latin America and exploration. The Canadian Segment is comprised of the Quebec Region and the Nunavut Region. The Quebec Region includes the LaRonde Mine, the LaRonde Mine extension project, the Goldex Mine and the Lapa Mine, each of which is held directly by the Company. In 2010, the Quebec Region accounted for 47% of the Company's gold production, comprised of 16% from the LaRonde Mine, 19% from the Goldex Mine and 12% from the Lapa Mine.

According to the Complaint, the Company's March 26, 2010 Form 20-F acknowledged that it is "largely dependent upon its mining and milling operations at the LaRonde Mine and the Goldex Mine and any adverse condition affecting those operations may have a material adverse effect on the

Company." Yet, the Company failed to disclose that Goldex Mine was experiencing significant structural problems. Specifically, the Complaint alleges that, throughout the Class Period, the Company's financial results were artificially inflated by virtue of the fact that the Company concealed material adverse problems present at its Goldex Mine which eventually forced the Company to shut down the mine and write off a $260 million investment in the mine.

The first public signs of significant problems at Agnico-Eagle Mines' Goldex Mine were disclosed on October 11, 2011. On this date, Agnico-Eagle Mines issued a press release entitled, "Agnico-Eagle Provides Third Quarter Operating Update; Announces Expanded Assessment, Monitoring and Remediation Program at Goldex" wherein the Company reported that it had received an opinion from a rock mechanics consultant that suggested that water inflow had negatively impacted the integrity of the rock mass. The press release assured that the remediation work would be reassessed on a three month basis to determine whether additional work or changes in the mining plan were warranted.

Then, on October 19, 2011, as alleged in the Complaint, Agnico-Eagle Mines issued a press release entitled, "Agnico-Eagle's Goldex mine to suspend production during investigation and remediation of water inflow and ground stability issue; book value of Goldex to be written off" as a result of the receipt of an opinion from a second rock mechanics consulting firm which recommended that underground mining operations be halted until the situation is investigated further. Agnico-Eagle Mines explained that, "[w]hile the Company continues to assess the situation, it appears that a weak volcanic rock unit in the hangingwall of the Goldex deposit has failed. This rock failure is thought to extend between the top of the deposit and surface. As a result, this structure has allowed ground water to flow into the mine. This water flow has likely contributed to further weakening and movement of the rock mass."

After the Company's announcement of the closing of the Goldex Mine, Agnico-Eagle Mines' stock price plunged 18.5% to close at $46.51 on October 19, 2011.

## III. ARGUMENT

### A. The Related Actions Pending before this Court Should be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).

Under Federal Rule of Civil Procedure 42(a), consolidation is appropriate when actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). At present, there are two securities class actions pending before this Court against Agnico-Eagle Mines and certain of its officers: (1) *Stone v. Agnico-Eagle Mines Ltd et al*, No. 1:11-CV-7968, filed November 7, 2011; and (2) *Hastings v. Agnico-Eagle Mines Ltd et al*, No. 1:11-cv-8466, filed November 22, 2011.

These Actions present substantially similar factual and share common legal issues.[2] Because these Actions are based on the same materially false and misleading statements, the same discovery

---

[2] In reviewing the complaints, there appears to be some discrepancies regarding the start date of the Class Period. *Compare, e.g.,* ¶1 *with* ¶13 of the *Stone* complaint. For purposes of this motion, the City of Brockton uses the longer Class Period, which purportedly runs from March 26, 2010 through October 19, 2011. *See*, *e.g.*, *Miller v. Dyadic Int'l, Inc.*, 2008 U.S. Dist. LEXIS 32271, at *11 (S.D. Fla. Apr. 18, 2008) (in determining the appropriate class period to evaluate lead plaintiff motions, "the Court finds that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at this early stage in the litigation."). In any event, minor differences in the length of the Class Period should not impact the consolidation of these related cases. *See Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 117 n.5 (S.D.N.Y. 2010) ("Although the complaints allege slightly different Class Periods, such differences are insufficient to undermine the efficiencies gained by consolidating these related cases.").

4

will be relevant to all lawsuits. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Thus, consolidation of the Actions is appropriate here.

### B. The City of Brockton Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) & (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Notice regarding the pendency of this action was published on *Marketwire*, a national, business-oriented newswire service, on November 7, 2011. *See* Rosenfeld Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A) & (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

5

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008); *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

### 2. The City of Brockton Satisfies the "Lead Plaintiff" Requirements of the PSLRA

#### a. The City of Brockton Has Complied with the PSLRA and Should Be Appointed Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on November 7, 2011), the City of Brockton timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class by the January 6, 2012 deadline. An authorized representative of the City of Brockton has signed and filed a Certification stating that the City of Brockton is willing to serve as the representative party on behalf of the class. *See* Rosenfeld Decl. Ex. C. In addition, the City of Brockton has selected and retained competent counsel to represent it and the class. *See* Rosenfeld Decl. Ex. D. Accordingly, the City of Brockton is entitled to have its application for appointment as Lead Plaintiff and selection of Lead Counsel considered and approved by the Court.

#### b. The City of Brockton Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed Certification and loss chart, the City of Brockton incurred a substantial loss of approximately $94,144 on its transactions in Agnico-Eagle Mines securities made in reliance upon materially false and misleading statements and was injured thereby. Rosenfeld Decl. Ex. B, C. The City of Brockton, thus, has a substantial financial interest in this case. Upon information and belief, the City

of Brockton possesses the largest financial interest of any movant seeking lead plaintiff status in the Actions.

### c. The City of Brockton Otherwise Satisfies Rule 23

According to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the motion for class certification. *See In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 579502, at *2 (S.D.N.Y. 2009) ("[A]t this stage a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23."). The City of Brockton satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality exists where the plaintiff's claims and the class claims arise from the same series of events and are based on the same legal theories as the

7

claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

The City of Brockton satisfies this requirement because, just like all other class members, it: (1) invested in Agnico-Eagle Mines during the Class Period; (2) made those investments in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages thereby. Thus, the City of Brockton's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events and are based on the same legal theories. *Caiafa v. Sea Containers Ltd.*, 2006 WL 2381841, at *1 (S.D.N.Y. Aug. 14, 2006) (court appointed lead plaintiff whose "claims are 'typical' in that they 'arise form the same course of conduct that gives rise to the claims of the other class members'").

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs this Court to limit its inquiry regarding the adequacy of the City of Brockton to represent the class to the existence of any conflicts between the interests of the City of Brockton and the members of the class. The Court must evaluate adequacy of representation by considering (i) whether the class representative's claims conflict with those of the class and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 2004 U.S. Dist. LEXIS 23946, at *53 (S.D.N.Y. Nov. 23, 2004).

Here, the City of Brockton is an adequate representative of the class. As evidenced by the injury suffered by the City of Brockton based on materially false and misleading statements, its interests are clearly aligned with the members of the class, and there is no evidence of any antagonism between the City of Brockton's interests and those of the other members of the class. Further, the City of Brockton has taken significant steps which demonstrate that it will protect the

interests of the class: it has retained competent and experienced counsel to prosecute these claims. As shown below, the City of Brockton's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. *See Caiafa*, 2006 WL 2381841, at *1 n.3 (appointing lead plaintiff that "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "has also retained counsel that is qualified, experienced and generally able to conduct the litigation.").

Moreover, the City of Brockton, an institutional investor, is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent classmembers." *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001); *City of Monroe Employees' Retirement System v. Hartford Financial Services Group, Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors."); *see also Rozenboom v. Van Per Moolen Holding, N.V. et al.*, 2004 WL 816440, at *2 (S.D.N.Y. Apr. 14, 2004) (citing congressional intent to encourage institutional investors to serve as lead plaintiffs).

Accordingly, the City of Brockton *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve the City of Brockton's Choice of Lead Counsel

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). In this regard, the City of Brockton has selected Robbins Geller to serve as Lead Counsel – a firm with substantial experience in the prosecution of shareholder and securities class actions in this District

and elsewhere. *See*, *e.g.*, *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) (approving selection of Robbins Geller as lead counsel); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2011 WL 6057812, at *1 (S.D.N.Y. Dec. 5, 2011) (same); *Lintz v. Agria Corp.*, 2008 U.S. Dist. LEXIS 99846, at *7 (S.D.N.Y. Dec. 3, 2008) (approving selection of Robbins Geller's predecessor firm); *In re Orion Secs. Litig.*, 2008 U.S. Dist. LEXIS 55368, at *17-18 (S.D.N.Y. July 8, 2008) (same); Rosenfeld Decl., Ex. D. Accordingly, the Court should approve the City of Brockton's selection of Lead Counsel.

**IV.     CONCLUSION**

For all the foregoing reasons, the City of Brockton respectfully requests that the Court: (i) consolidate the related actions pursuant to Fed. R. Civ. P. 42(a); (ii) appoint it as Lead Plaintiff in the Action; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED: January 6, 2012                    ROBBINS GELLER RUDMAN & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD

                                                    */s/ David A. Rosenfeld*
                                          DAVID A. ROSENFELD

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          drosenfeld@rgrdlaw.com

>ROBBINS GELLER RUDMAN & DOWD LLP
>PAUL J. GELLER
>DOUGLAS WILENS
>SABRINA E. TIRABASSI
>120 E. Palmetto Park Road, Suite 500
>Boca Raton, FL  33432-4809
>Telephone:  561/750-3000
>561/750-3364 (fax)
>pgeller@rgrdlaw.com
>dwilens@rgrdlaw.com
>stirabassi@rgrdlaw.com
>
>[Proposed] Lead Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

>*s/ David A. Rosenfeld*
>DAVID A. ROSENFELD