UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME STONE, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>AGNICO-EAGLE MINES LTD, SEAN BOYD, EBERHARD SCHERKUS, AMMAR ALJOUNDI, and DAVID GAROFALO,<br><br>                Defendants. | Electronically Filed<br><br>Civil Action No. 1:11-cv-07968-JPO<br><br>Judge J. Paul Oetken |
| CHRIS HASTINGS, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>AGNICO-EAGLE MINES LTD, SEAN BOYD, EBERHARD SCHERKUS, AMMAR ALJOUNDI, and DAVID GAROFALO,<br><br>                Defendants. | Civil Action No. 1:11-CV-08466-JPO<br><br>Judge J. Paul Oetken |

**MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THE MOTION OF
RANDALL HUMPHREYS FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION
OF CO-LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................4

    I.    AP1 HAS NUMEROUS PROBLEMS RENDERING IT UNFIT TO
        SERVE AS LEAD PLAINTIFF ..............................................................................4

        A.    AP1 Has Not Demonstrated Its Standing.....................................................4

        B.    The *Bank of America* Case............................................................................6

        C.    Unique Defenses Concerning Forsta's Canadian Trading............................9

        D.    Res Judicata Issues.....................................................................................10

    II.   OF REMAINING MOVANTS, HUMPHREYS HAS THE LARGEST
        FINANCIAL INTEREST ......................................................................................12

CONCLUSION..............................................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**

*Applestein v. Medivation, Inc.*, No. C 10-00998, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .................................................................................................................. 6

*Baydale v. Am. Express Co.*, 09 Civ. 3016(WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) .................................................................................................................. 8

*Borochoff v. Glaxosmithkline PLC,* 246 F.R.D. 201 (S.D.N.Y. 2007) .................................. 10, 12

*Ferrari v. Impath, Inc.*, No. 03 CIV. 5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) .................................................................................................................. 6

*Foley v. Transocean Ltd.*, 272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................ 4

*Hilton v. Guyot,* 159 U.S. 113 (1895) ....................................................................................... 11

*In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ........... 4, 5

*In re Royal Ahold N.V. Sec. & ERISA Litig,* 219 F.R.D. 343 (D. Md. 2003) ......................... 11, 12

*In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) ......................................................... 4

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) .................................................................................. 6

*Morrison v. National Australian Bank Ltd.,* 130 S.Ct. 2869 (2010) ............................................. 9

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................................... 2, 6, 8

*Smajlaj v. Brocade Comm'ns Sys. Inc.*, No. C 05-2042-CRB, 2006 U.S. Dist. LEXIS 97618 (N.D. Cal. Jan. 12, 2006) ........................................................................... 8

*W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ......................................................................................................... 2, 4, 6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248 (S.D.N.Y. 2003) ...................... 5

**RULES**

Fed. R. Civ. P. 23 .................................................................................................................. passim

**OTHER AUTHORITIES**

Symeon Symeonides et al., Conflict of Laws: American, Comparative, International 860 (St. Paul 1998) ................................................................................................ 11

Travis Newport, *Tortious Interference with International Contracts,* 9 Int'l Trade L.J.
    80 (2000) .................................................................................................................. 11

Yoav Oestreicher, *The Rise and Fall of "Mixed" and "Double" Convention Models
    Regarding Recognition and Enforcement of Foreign Judgments,* 6 Wash. U.
    Global Stud. L. Rev. 339 (2007) .............................................................................. 11

**INTRODUCTION**

Randall Humphreys suffered the largest loss of any movant qualified to serve as lead plaintiff. Thus, Humphreys overcomes any presumption that another movant with a larger stated loss should be appointed as lead plaintiff. Humphreys respectfully submits this memorandum in opposition to the competing motions to consolidate related actions, appoint lead plaintiff and approve lead counsel that are pending before this Court,[1] and in further support of his motion for appointment as lead plaintiff and for approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") and Gilman Law LLP as co-lead counsel for the class.

**PRELIMINARY STATEMENT**

As discussed below, there are so many different issues plaguing AP1 that it is difficult to know where to start. Where AP1's losses and those of Humphreys are so close ($3.6 million and $3.4 million, respectively), it simply does not make sense to appoint as lead plaintiff a foreign investor with a long list of issues rendering it atypical of other class members when an American investor with no such impediments is ready, willing, and able to serve as lead plaintiff.

Humphreys suffered a significant loss as a result of the alleged fraud at Agnico-Eagle Mines, Ltd. – $3.4 million – which constitutes the single largest financial interest in this action of movants who satisfy the requirements of the Private Securities Litigation Reform Act ("PSLRA"). The reported losses of all competing movants are as follows:

---

[1] Competing motions for appointment as lead plaintiff were made by: (1) Forsta AP-Fonden ("AP1"); (2) City of Brockton Retirement System ("Brockton"); (3) Robert Lacey; (4) Chris Hastings, Brent Barrett, Robert D. Ver Schave, and Ernest Schalk (collectively, the "Agnico Group"); and (5) Lance S. Clark ("Clark"). Recognizing they lack the largest financial interest in these actions, Brockton and Clark have filed notices of non-opposition to competing motions.

| Movant | Loss |
|---|---|
| **Första AP-Fonden** | **($3,613,971)** |
| **Randall Humphreys** | **($3,407,006)** |
| **City of Brockton Retirement System** | **($94,144)** |
| **Robert Lacey** | **($47,872)** |
| Chris Hastings | ($4,391) |
| Brent Barrett | ($17,801) |
| Robert D. Ver Schave | ($17,186) |
| Ernest Schalk | ($9,287) |
| **Agnico-Eagle Investor Group** | **($48,665)** |
| **Lance S. Clark** | **($26,137)** |

However, financial interest is not the end of the analysis. Courts must also ensure that prospective lead plaintiffs satisfy standing requirements as well as Fed. R. Civ. P. 23. Here, there is a long list of serious questions concerning AP1's standing, as well as its typicality and adequacy under Rule 23.

First, AP1's standing is unclear. Based on its own website, AP1 appears to be an asset manager, whose clients are the real parties in interest. In *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), the Second Circuit held that investment advisers must have legal title to their clients' claims in order to litigate on their behalf. Southern District courts have repeatedly required proposed lead plaintiffs to satisfy *Huff's* standing requirement.

AP1 has not demonstrated that it has, or had, title to the Agnico-Eagle securities at issue. Thus, AP1 has not demonstrated standing. Nor has it demonstrated its authority to sue on its clients' behalf. Without proof of title and authority to sue, AP1 cannot serve as lead plaintiff. In any event, discovery is warranted to get to the bottom of these issues so as not to foist a lead plaintiff on the class saddled with standing or Rule 23 problems. *See infra* at 6 n.2.

Similar issues arose in another case in this District, *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011). In *Bank of America*, AP1

and the Pennsylvania Public School Employees Retirement System ("PSERS") moved for appointment as co-lead plaintiffs. A sister Swedish entity to AP1, AP7, also moved for lead plaintiff as part of a separate group. AP1 then withdrew and its proposed co-lead plaintiff, PSERS, attacked AP7 for lacking standing. Critically, AP7 argued that there was no legal distinction between it and AP1. Yet the court held there were too many open questions surrounding AP7 and denied its motion for lead plaintiff – although it had the largest loss in the action.

AP1 has other issues. AP1 bought Agnico securities on the Toronto Stock Exchange as well as on the New York Stock exchange. *See infra* at 9. Thus, AP1 has a fiduciary duty to its pensioner clients to seek to recover AP1's losses in Canada – and this opens up a whole host of questions: If AP1 does not file a Canadian action, can Defendants attack it as an inadequate lead plaintiff for abdicating its fiduciary duties to its pensioner clients? If it does file such an action, can it participate in both actions when there is one lump sum of money that Plaintiffs in both actions will be seeking? Further, did AP1 rely on Canadian securities filings when making its Agnico investments on the Toronto exchange? If so, were these statements different than the alleged misstatements here? Did AP1 buy Agnico securities on the Munich, Stuttgart, Dusseldorf, Berlin, Frankfurt, or Xetra exchanges on which Agnico traded? The questions – and unique defenses AP1 is subject to under Fed. R. Civ. 23 – abound.

AP1 also suffers from a Rule 23 impediment concerning whether there will be a *res judicata* effect of any American judgment in Sweden. Defendants can attack AP1 as atypical of other class members on this ground as well.

In sum, AP1 is a foreign fund plagued by a laundry list of serious issues – any one of which can come back to haunt the class at a later stage – and possibly jeopardize the litigation.

In contrast, Humphreys is an American investor who has no Rule 23 impediments, suffered a loss very close to that of AP1, and has all the motive in the world to recover his massive losses, and the losses of the class.

Indeed, with AP1 out of the running, Humphreys has the largest financial interest in this action. Humphreys' financial interest ($3.4 million) is more than 34 times larger than that of the next largest loss, Brockton ($94,144). Accordingly, Humphreys should be appointed as lead plaintiff and his choice of co-lead counsel approved.

## ARGUMENT

### I. AP1 HAS NUMEROUS PROBLEMS RENDERING IT UNFIT TO SERVE AS LEAD PLAINTIFF

#### A. AP1 Has Not Demonstrated Its Standing

In *Huff*, the Second Circuit found that an investment advisor lacked standing to litigate because it was the advisor's clients, not the advisor, who had the ownership interest in the stock that was the subject of the lawsuit. 549 F.3d at 111. As noted, Southern District courts have applied *Huff* in the lead plaintiff context. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 n.2 (S.D.N.Y. 2011) (proposed lead plaintiff lacked "necessary property interest" in shares under *Huff*); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009) (investment advisor rejected as lead plaintiff because it did not have standing under *Huff*); *In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033, at *1 (S.D.N.Y. June 29, 2009) (investment advisor did not have standing under *Huff* when it moved for lead plaintiff; later assignment of claims, which would suffice for standing, did not cure problem because post-filing assignment still raised typicality issues under Rule 23).

4

It is unclear whether AP1 is an asset manager, as its website seems to suggest, in which case it would not have title to the Agnico-Eagle securities at issue. AP1's website states that it "manages other people's money" – the hallmark of an investment advisor:

> Since 1960, Första AP-fonden's mission has been to **manage assets on behalf of Sweden's current and future pensioners**. In connection with the reform of the Swedish pension system in 2001, the Fund's mission was also redefined.
>
> The Fund has a very important mission, to invest around one fourth of the Swedish income pension system's buffer capital. **This means that the Fund manages pension assets on behalf of every person who is, or ever has been, employed in Sweden. Managing other people's money is a responsibility and a challenging job….**
>
> **Första AP-fonden has been directed by the Swedish Parliament to manage pension capital on behalf of the Swedish people….**
>
> **The Swedish Parliament has assigned Första AP-fonden the mission of managing the Swedish people's pension capital.**
>
> Första AP-fonden's mission is regulated by the Swedish National Pension Funds Act. The act (and preparatory work to the act) state that Första AP-fonden shall:
>
> • Function as a buffer in the pension system
> • Maximize long-term return with a low level of risk
> • **Manage the funds without being influenced by prevailing government policies, whether industrial or economic**

http://www.ap1.se/en/About-AP1 (emphasis added).

Since AP1's standing is unclear, it must demonstrate such standing to litigate this action. Since it has not demonstrated title over the Agnico-Eagle securities at issue, it has not demonstrated standing; thus, it should not be appointed as lead plaintiff. As noted, even if it was to produce post-lead plaintiff motion assignments of title, it would still be subject to unique defenses under Rule 23. *See IMAX*, 2009 WL 1905033, at *1. Further, AP1 has not demonstrated, as it must, that it has authority to sue on their clients' behalf. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003); *cf. Huff*, 549 F. 3d at

5

112. Humphreys respectfully requests limited discovery of AP1 to ensure there are no *Huff* or Rule 23 issues concerning standing or authority to sue that could later jeopardize the case for the class.[2]

### B. The *Bank of America* Case

In another case in this district, *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011), the following movants, including AP1 and a related Swedish entity, AP7, filed motions to be appointed lead plaintiff with the following losses:

1. PSERS and AP1 - $11.5 million
    a. Penn. Pub. School Emp. Ret. System (PSERS) - $9.8 million
    b. Forsta Ap-Fonden (AP1) - $1.6 million
2. Institutional Investor Group - $24.6 million
    a. Sjunde Ap-Fonden (AP7) - $14.8 million
    b. Arkansas Teacher Retirement System - $3.6 million
    c. KBC Asset Mgmt - $6.2 million
3. Pipefitters Local No. 636 - $131,368
4. Local 338 - $646,774

*Id.* at 190.

---

[2] The PSLRA provides for discovery in connection with the appointment of lead plaintiff and counsel in limited circumstances, requiring "the plaintiff first demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). *See Applestein v. Medivation, Inc.*, No. C 10-00998, 2010 WL 3749406, at *5 (N.D. Cal. Sept. 20, 2010) (allowing limited discovery into, *inter alia*, structure of prospective lead plaintiff investment fund); *see also Ferrari v. Impath, Inc.*, No. 03 CIV. 5667, 2004 WL 1637053, at *7 (S.D.N.Y. July 20, 2004) (noting limited discovery of prospective lead plaintiff can be warranted where a reasonable basis exists); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177, 2007 WL 2683636, at *3 (D.N.J. Sept. 7, 2007) (granting limited discovery of prospective lead plaintiff). Here, Humphreys has demonstrated a reasonable basis for discovery on AP1 because it has *prima facie* standing issues. If this issue is not cleared up now, it can come back to haunt the class at the time of class certification – and could even jeopardize the litigation. Further, discovery is also warranted on the issues discussed below relating to AP1's Canadian Agnico investments.

AP1 subsequently withdrew its motion for lead plaintiff, but that did not stop its former co-movant, PSERS, from attacking AP1's sister entity, AP7. PSERS first argued that AP7 lacked standing. PSERS argued that:

> AP7 supports a defined contribution pension system…. Accordingly, AP7 does not have, and is, in fact, prohibited from having, a financial stake in the assets under its management…. Instead, it is the individual Swedish pension savers, not AP7, who bear the market risk associated with the investments that are managed by AP7…. As such, AP7 cannot rely upon the interests of others to establish its own bona fide as a prospective lead plaintiff, nor can it argue that any kind of attorney-in-fact or principal-agent relationship is sufficient to give it Article III standing.

PSERS Reply Brief at 5 (attached to accompanying Seidman Declaration as Exhibit A).

AP7 filed a reply addressing the standing issue. AP7, which as an entity related to AP1 would have reason to know, argued that AP1 – PSERS former co-movant – and AP7 are both part of the National Pension Insurance Funds in Sweden and that *there was no legal distinction between the two*:

> Chapter 3, Section 1 of the Act provides that each of the AP Funds shall have a board of directors that is responsible for the organization and management of the relevant fund. The Act also specifies that each board of directors represents its respective AP Fund and that the board is authorized to represent each fund before a court of law. **[T]here is no legally relevant distinction between AP7 and the other AP Funds…. It is a government pension fund, no different in that regard from PSERS or AP1…. It invests its pensioners' assets through funds that it controls over which it has sole managerial and legal authority…. AP7 is a pension fund, not an investment advisor…. Its pensioners do not own shares of Bank of America, its funds do, and the pensioners and the funds have no ability to protect their interests except through the actions of AP7.**

AP7 Reply Brief at 2, 3, 4 (Seidman Decl. Ex. B) (emphasis added).

Yet, notwithstanding AP7's claims, and even where "Swedish law authorize[d] AP7 to sue on behalf of the funds it manages[,]" the court found AP7 was subject to unique standing

7

defenses and refused to appoint AP7 as lead plaintiff – despite the fact that it had the single biggest loss:

> …AP7 does not own the securities at issue; instead, it submits the opinion of a Swedish law expert that AP7 is the only entity permitted to sue on behalf of the funds it manages. **At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class.**

*Id.* at 189, 191 (emphasis added). *See also Baydale v. Am. Express Co.*, 09 Civ. 3016 (WHP), 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009) (Swedish money manager, only entity permitted to bring suit on behalf of the funds it managed, rejected as lead plaintiff because its status "raises complex and novel issues of law which would require extensive factual and foreign legal analysis. **Such a diversion would be a needless litigation sideshow....if this Court were to appoint [it] as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal**") (emphasis added); *Smajlaj v. Brocade Comm'ns Sys. Inc.*, No. C 05-2042-CRB, 2006 U.S. Dist. LEXIS 97618, at *5 (N.D. Cal. Jan. 12, 2006) (rejecting lead plaintiff movant where there were "too many questions surrounding [movant's] standing, authority, transparency and structure that may give rise to unique defenses and are atypical of the class a whole…. As a result, the presumption in favor of [movant] is overcome, and the Court moves to the next largest financial stake in the outcome of the matter").

    Thus, it is not the ultimate success of these arguments against AP1 that is important. What is important is that they are serious arguments which will, indeed, be a "needless litigation sideshow" to the detriment of the class. *Baydale*, 2009 WL 2603140, at *2. Appointing Randall Humphreys, an American investor who has a substantial loss stemming from his Agnico investments – indeed, very close to AP1's loss – will avoid these dangers.

### C. Unique Defenses Concerning AP1's Canadian Trading

Humphreys' counsel sent an email to AP1 on January 11, 2012, inquiring as to whether, in addition to its trades on the New York Stock Exchange, AP1 traded Agnico securities on the Toronto exchange. *See* Seidman Decl. Ex. C. On January 20, 2012, AP1's counsel informed Humphreys' counsel that AP1 had, in fact, traded on the Toronto exchange, and had lost money on those trades as well. *See* Seidman Decl. at ¶5.

As a fiduciary for its clients, AP1 is duty-bound to seek to recover for losses suffered on the Toronto exchange.[3] However, this raises additional questions about AP1: Can it participate in both a U.S. and Canadian action when there is one pot of money that Plaintiffs will be seeking from Defendants in both cases? If AP1 does not file an action in Canada, will Defendants attack AP1 as an inadequate lead plaintiff for not guarding the interests of its pensioners? Did AP1 buy Agnico securities on the Munich, Stuttgart, Dusseldorf, Berlin, Frankfurt, or Xetra exchanges, on which Agnico securities also traded? The questions keep multiplying.

Further, did AP1 rely on any Canadian securities filings when making its investments on the Toronto exchange? If so, were Defendants' statements in Canadian filings different? If so, how? If it traded on exchanges beyond the Toronto and New York exchanges, did AP1 rely on any securities filings from other jurisdictions?

These are not academic questions. Defendants fight tooth and nail at the class certification stage, attacking lead plaintiffs and class representatives ruthlessly – trying to capitalize on any weakness or unique defense in order to defeat class certification. Defendants

---

[3] Under *Morrison v. National Australian Bank Ltd.,* 130 S.Ct. 2869, 2886 (2010), securities fraud actions filed in the United States only cover securities bought on *American* exchanges. Thus, this action does not cover Agnico securities bought on other exchanges, such as the Toronto Stock Exchange.

9

know full well that defeating class certification is tantamount to dismissing the action because of the tremendous, and prohibitive, cost of litigating securities fraud actions on an individual basis.

In stark contrast to AP1, Randall Humphreys is a domestic United States investor with a mammoth loss, $3.4 million, who suffers from none of the long list of impediments plaguing AP1.

### D. Res Judicata Issues

Recent decisions in this District raise questions concerning whether a foreign fund can serve as a lead plaintiff because of possible *res judicata* issues. These decisions have found that such foreign funds could face challenges by defendants at class certification on the ground that they are subject to unique defenses because this Court's orders may not be enforceable in their respective home jurisdictions. *See Borochoff v. Glaxosmithkline PLC,* 246 F.R.D. 201, 204-05 (S.D.N.Y. 2007) (refusing to appoint as lead plaintiff a group of foreign institutional investors in light of the possibility that a foreign court would not give a U.S. judgment *res judicata* effect). This issue subjects AP1 to unique defenses that the class would not be burdened with if Humphreys is appointed as lead plaintiff.

Defendants will certainly challenge whether AP1 can serve as a representative plaintiff by raising questions concerning whether any judgment of this Court will be afforded *res judicata* effect in its jurisdiction of Sweden. *See Borochoff,* 246 F.R.D. at 204-05 (refusing to appoint as lead plaintiff a group of foreign institutional investors in light of the possibility that a foreign court would not give a U.S. judgment *res judicata* effect); *In re Royal Ahold N.V. Sec. & ERISA Litig,* 219 F.R.D. 343, 352 (D. Md. 2003) (refusing to appoint foreign lead plaintiff because "[f]oreign courts might not recognize or enforce such a decision from an American court, which

would allow foreign plaintiffs in the class to file suit against the defendant again in those foreign courts").

Because AP1 might not be bound by a dismissal of the claims in this Court, and could have a second opportunity to prosecute those claims in a foreign jurisdiction, Defendants would likely argue that AP1 is not in the same position as other class members.

The Supreme Court's decision in *Hilton v. Guyot* provides support for the proposition that Swedish courts have traditionally declined to give *res judicata* effect to judgments of U.S. courts absent a treaty. *See Hilton v. Guyot,* 159 U.S. 113, 218 (1895) ("In Sweden the principle of reciprocity has prevailed from very ancient times. The courts give no effect to foreign judgments, unless upon that principle; and it is doubtful whether they will even then, unless reciprocity is secured by treaty with the country in which the judgment was rendered.")

Likewise, Defendants might cite to more recent commentators who note that Swedish courts remain reluctant to recognize judgments of foreign jurisdictions. *See, e.g.,* Yoav Oestreicher, *The Rise and Fall of "Mixed" and "Double" Convention Models Regarding Recognition and Enforcement of Foreign Judgments,* 6 Wash. U. Global Stud. L. Rev. 339, 345 n.35 (2007) ("For example, Sweden and the Netherlands seem to refrain from enforcing foreign judgments if no treaty is available.") (*citing* Symeon Symeonides et al., Conflict of Laws: American, Comparative, International 860 (St. Paul 1998)); Travis Newport, *Tortious Interference with International Contracts,* 9 Int'l Trade L.J. 80, 87 (2000) ("Many nations including China, Denmark, Sweden and the Netherlands, only give a foreign judgment *persuasive* authority when a party attempts to enforce it.")

Defendants, armed with these arguments and others, might challenge AP1's typicality, presenting a risk that is appropriately considered on this lead plaintiff motion. *See Glaxosmithkline,* 246 F.R.D. at 203-05; *In re Royal Ahold,* 219 F.R.D. at 352.

## II. OF REMAINING MOVANTS, HUMPHREYS HAS THE LARGEST FINANCIAL INTEREST

Any one of the list of issues above would rebut the presumption that AP1 is the most appropriate lead plaintiff. Collectively, the issues decisively rebut the presumption. With AP1 disqualified, Humphreys has the largest financial interest in this action – by a long shot. *See supra* at 1.

As mentioned above, Humphreys and AP1 could not be more different. Humphreys, an American investor, has no standing or typicality issues, and suffers from none of the long list of problems saddling AP1. Accordingly, in these circumstances, there is simply no need to appoint a foreign investor that is a liability to the class rather than an American investor with very similar losses. Humphreys should be appointed as lead plaintiff, and his choice of counsel approved.

## CONCLUSION

For the foregoing reasons and those given in his opening brief, Humphreys respectfully requests that this Court: (1) consolidate the related, and any subsequently-filed related, actions; (2) appoint Humphreys as lead plaintiff for the class in the action and all subsequently-filed, related actions; and (3) approve Gilman Law and Bernstein Liebhard as co-lead counsel for the class.

Dated: January 23, 2012          Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**

/s/
_____
Sandy A. Liebhard (liebhard@bernlieb.com)

Joseph R. Seidman, Jr. (seidman@bernlieb.com)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

Kenneth G. Gilman (kgilman@gilmanpastor.com)
Kristian Kraszewski (kristian@gilmanpastor.com)
Rene Potkay Moniz (rpotkay@gilmanpastor.com)
**GILMAN LAW LLP**
Beachway Prof. Center Tower
3301 Bonita Beach Rd. Suite 307
Bonita Springs, FL 34134
Telephone: (239) 221-8301
Facsimile: (239) 676-8224

*Attorneys for Movant Randall Humphreys and Proposed Co-Lead Counsel for the Class*