UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME STONE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGNICO-EAGLE MINES LTD, SEAN BOYD, EBERHARD SCHERKUS, AMMAR AL-JOUNDI, and DAVID GAROFALO,<br><br>Defendants. | Civil No. 11 CIV 7968-JPO<br><br>ECF FILED |
| CHRIS HASTINGS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGNICO-EAGLE MINES LIMITED, SEAN BOYD, EBERHARD SCHERKUS, AMMAR AL-JOUNDI, and DAVID GAROFALO,<br><br>Defendants. | Civil No. 11 CIV 8466-JPO |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF FÖRSTA AP-FONDEN FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO ALL OTHER MOTIONS**

...

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    1.    AP1 Has the Largest Financial Interest of Any Qualified Movant ......................... 3

    2.    AP1 Satisfies the Relevant Requirements of Rule 23 ............................................ 7

CONCLUSION .......................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Boyd v. NovaStar Fin.*,
    No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. July 9, 2007) .................................5

*Chilton v. Chiumento Group*,
    365 Fed. Appx. 298 (2d Cir. 2010) ...............................................................................................7

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................................................2, 6, 7

*Ellenburg v. JA Solar Holdings Co.*,
    262 F.R.D. 262 (S.D.N.Y. 2009) ...............................................................................................1, 4

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................................2, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
    No.06-CV-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .............................3

*In re the Mills Corp.*,
    No, Civ. A. 1:06-77(GEL), 2006 WL 2035391 (E.D. Va. May 30, 2006) ................................4

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ..................................................................................................7

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................1, 4, 5, 6

*In re ShengdaTech, Inc.*,
    11 Civ. 1918 (TPG), 2011 U.S. Dist. LEXIS 141695 (S.D.N.Y. Dec. 6, 2011) .......................7

*Jolly Roger Offshore Fund v. Bkf Capital Group*,
    07 Civ. 3923 (RWS), 2007 U.S. Dist. LEXIS 60437 (S.D.N.Y. Aug. 14, 2007) ..................2, 8

*Richman v. Goldman Sachs Group, Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ..............................................................................................4, 5

*Schueneman v. Arena Pharms., Inc.*,
    No. 10cv1959 BTM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...........................................4

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ...........................4

**STATUTES**

15 U.S.C. § 78u-4 ............................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) .................... 2, 8

S. Rep. No. 104-98 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679 (1995) ........................................ 8

Första AP-Fonden ("AP1") respectfully submits this memorandum of law in further support of its motion in the above-captioned securities litigation (the "Action") for appointment as Lead Plaintiff, approval of its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class, consolidation of all related actions, and in opposition to all other competing motions.

## PRELIMINARY STATEMENT

AP1 is the "most adequate" plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), because AP1 has the largest financial interest of any qualified movant and otherwise satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, AP1 incurred a loss of over $3.6 million on its Class Period transactions in the common stock of Agnico-Eagle Mines Ltd. ("Agnico" or the "Company") on the New York Stock Exchange. None of the other five competing movants even comes close to asserting a greater financial interest than AP1. In fact, the only movant claiming a financial interest approaching that of AP1 is an individual investor named Randall Humphreys, who claims to have incurred a loss that is more than $200,000 smaller than AP1's loss. *See* ECF Nos. 15 at 2, 12 at 9; Chart, *infra* at 5.

Moreover, AP1 has the largest financial interest of any movant under the other established metrics that courts consider at the Lead Plaintiff stage. Those metrics – the "*Olsten* factors" – include: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) approximate losses." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *see also Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 265 (S.D.N.Y. 2009) (Koeltl, J.). As reflected in the chart below, in addition to having the largest approximate loss by a margin of over $200,000, AP1 also purchased over 107,000 *more* net shares of Agnico common stock during the

Class Period and expended over $4.5 million *more* net funds on those purchases than Mr. Humphreys expended purchasing Agnico shares.  *See* Chart, *infra*, at 5.  Moreover, Mr. Humphreys, who engaged in 1,447 transactions in Agnico common stock during the Class Period, appears to have improperly inflated his claimed loss by including losses incurred before any alleged disclosure of the fraud.  Courts have held that such losses are not compensable under the U.S. Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)**,** and have no bearing on Mr. Humphreys' financial interest in the litigation.  Accordingly, AP1 indisputably has the largest financial interest under all of the established metrics used by courts for purposes of appointing a Lead Plaintiff.

AP1 is also a sophisticated and experienced institutional investor, and is therefore the paradigmatic Lead Plaintiff envisioned by Congress in enacting the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at *28, (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 732 (explaining that increasing the role of institutional investors in securities class actions will benefit shareholders and assist courts by improving the quality of representation).  Courts in this District favor the appointment of institutional investors like AP1 as Lead Plaintiff over individual investors because they are ideally suited to prevent lawyer-driven litigation and to ensure the vigorous prosecution of the Class' claims.  *See, e.g.*, *Jolly Roger Offshore Fund v. Bkf Capital Group*, 07 Civ. 3923 (RWS), 2007 U.S. Dist. LEXIS 60437, at *4 (S.D.N.Y. Aug. 14, 2007) (Sweet, J.) (explaining that the PSLRA was intended to prevent lawyer-driven litigation by encouraging sophisticated institutional investors with significant financial interests to serve as Lead Plaintiff and select and control class counsel); *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (McMahon, J.) (appointing an institutional investor as Lead Plaintiff and recognizing that institutions are ideally suited to control securities class action litigation).  AP1, in particular, also

has significant experience litigating complex securities class actions and selecting and supervising class counsel, including, Bernstein Litowitz, its chosen counsel here. *See* ECF No. 21, at 8. In light of the foregoing, AP1 respectfully submits that it is the "most adequate" plaintiff in the Action, and is ideally suited to serve as Lead Plaintiff for the Class.

Under the PSLRA, having the largest financial interest entitles AP1 to the strong presumption in favor of being appointment Lead Plaintiff – a presumption that can only be rebutted upon "proof" that AP1 is either atypical or inadequate to lead the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists to rebut the presumption in favor of appointing AP1 and, therefore, AP1 should be appointed as Lead Plaintiff in the Action.

## ARGUMENT

### 1. AP1 Has the Largest Financial Interest of Any Qualified Movant

AP1 should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

AP1 indisputably has the largest financial interest of any qualified movant in the Action. *See* Chart, *infra* at 5. Defendants' misconduct, and the subsequent market correction of the price of Agnico common stock, caused AP1 to incur a loss of over $3.6 million. AP1's loss is the same whether calculated on a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") basis.[1]  AP1's

---

[1] Courts commonly employ both the "FIFO" and "LIFO" methods for calculating financial interest for purposes of appointing a Lead Plaintiff under the PSLRA. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No.06-CV-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (explaining that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods). Under the FIFO method, sales are offset against the

loss exceeds the loss asserted by the next largest movant, Mr. Humphreys, by a margin of over $200,000.  Courts in this District have found smaller disparities in losses to be dispositive of the financial interest determination at the Lead Plaintiff stage.  *See, e.g. Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *13 (S.D.N.Y. Jan. 24, 2006) (Holwell, J.) (finding a $121,231 difference in losses dispositive at the Lead Plaintiff stage).  Accordingly, here too, AP1 is entitled to the strong presumption in favor of being appointed Lead Plaintiff.

AP1 should also be appointed Lead Plaintiff because it has the largest financial interest of any qualified movant under the *Olsten* factors, used by some courts to determine the greatest financial interest at the Lead Plaintiff stage.   The *Olsten* factors include: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) approximate losses.  *In re Olsten*, 3 F. Supp. 2d at 295; *see also Ellenburg* 262 F.R.D. at 265.  Courts in this District that apply the *Olsten* factors regard the fourth factor, approximate loss, as the most important factor.  *See, e.g.*, *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) (Crotty, J.) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest"); *Weiss* 2006 WL 197036, at *3 ("The amount of financial loss is the most significant of [the four factors]").  Several other courts, however, place the greatest emphasis on net shares purchased and net expenditures because those factors focus exclusively on transactions made during the Class Period and on the movants' holdings when the alleged fraud is revealed.  *See, e.g.*, *Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM, 2011 WL 3475380, at *2 (S.D. Cal. Aug. 8, 2011) (placing the "greatest weight on the number of net shares purchased"); *In re the*

---

movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward.  Under the LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.

*Mills Corp.*, No, Civ. A. 1:06-77(GEL), 2006 WL 2035391, at *3 (E.D. Va. May 30, 2006) (appointing as Lead Plaintiff the movant that asserted the largest net funds expended). All courts, however, including those in this District, agree that the first factor – total shares purchased – is the least important *Olsten* factor. *See, e.g., Richman*, 274 F.R.D. at 475-476 (noting the trend that total shares purchased is considered the least important of the four factors); *Boyd v. NovaStar Fin.*, No. 07-0139-CV-W-ODS, 2007 WL 2026130, at *3 (W.D. Mo. July 9, 2007) (explaining that "the number of shares purchased during the class period is less relevant than the *net* number of shares purchased during the class period, as the latter figure will represent the number of shares purchased after the fraud and held when the fraud was revealed") (emphasis in original).

As reflected in the chart below, AP1 has the largest financial interest in the Action under all three critical *Olsten* factors. Therefore, AP1 is entitled to the strong presumption in favor of being appointed Lead Plaintiff no matter which of the established metrics the Court adopts to determine the greatest financial interest at the Lead Plaintiff stage.

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Loss[2] |
|---|---|---|---|---|
| Forsta-AP Fonden (AP1) | 173,080 | **173,080** | **$10,978,017** | **($3,613,971)** |
| Randall Humphreys | 392,460 | 65,650 | $6,461,710 | ($3,407,006) |
| City of Brockton Retirement System | 7,000 | 7,000 | $402,340 | ($94,144) |
| Agnico-Eagle Investor Group | 68,349 | 3,434 | $235,098 | ($48,665) |
| Robert Lacey | 1,689 | 1,689 | $118,608 | ($47,872) |
| Lance Clark | 2,500 | 2,000 | $110,395 | ($26,137) |

---

[2] Identical FIFO and LIFO losses were calculated for each movant.

5

Specifically, in addition to incurring the largest approximate loss by over $200,000, AP1 purchased over 107,000, or about 164% more net shares and expended over $4.5 million, or about 70% more net funds during the Class Period than did Mr. Humphreys.  The fact that Mr. Humphreys purchased more total shares than AP1 during the Class Period is inconsequential.  Total shares purchased is the least important *Olsten* factor and only demonstrates that Mr. Humphreys engaged in voluminous trading during the Class Period.  In fact, Mr. Humphreys' aggressive trading, which is detailed in the 24-page loss chart submitted along with his motion, is likely to subject Mr. Humphreys to unique defenses that make him atypical of the Class and substantially diminish his recoverable losses.  *See* ECF No. 16-3.  As reflected in his loss chart, Mr. Humphreys' high number of total shares purchased was due to the 1,447 transactions that he executed during the Class Period, including 782 purchases and 665 sales of Agnico common stock.  Indeed, Mr. Humphreys was constantly buying and selling Agnico shares during the Class Period pursuant to his own unique trading strategy.  In fact, on October 4, 2011, more than two weeks before the final corrective disclosure of the alleged fraud, Mr. Humphreys completely sold out his position in Agnico common stock in his two primary accounts, which accounted for approximately 1,441 of his Class Period transactions.  Although Mr. Humphreys subsequently repurchased Agnico shares in those accounts, his unique trading pattern is likely to subject him to unique defenses that would unnecessarily harm the Class.

Moreover, under the U.S. Supreme Court's holding in *Dura Pharmaceuticals*, 544 U.S. at 341-42, an investment loss is only compensable if there is a causal connection between the alleged misrepresentations and the economic loss suffered *i.e.* a decline in the price of the subject security when some or all of the truth is revealed.  An analysis of Mr. Humphreys' trading reveals that at least $635,000 of his losses were incurred on transactions made prior to the first partial corrective

6

disclosure pleaded in the complaints on file in the Action, which allegedly occurred on July 27, 2011. Those losses are potentially uncompensable under *Dura*. *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011) (Daniels, J.) (finding that in-and-out purchasers who sold out their holdings before a corrective disclosure cannot serve as class representatives). Because those losses were due to Mr. Humphreys' unique trading pattern and not the Defendants' alleged fraud, Mr. Humphreys' financial interest in the Action should be reduced to approximately $2.76 million, further widening the disparity in losses between Mr. Humphreys and AP1.

Having asserted the greatest financial interest under all of the established metrics used at the Lead Plaintiff stage, AP1 indisputably has the largest stake in the Action and should be appointed Lead Plaintiff on behalf of the Class.

### 2. AP1 Satisfies the Relevant Requirements of Rule 23

AP1 should also be appointed Lead Plaintiff because AP1 otherwise satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Chilton v. Chiumento Group*, 365 Fed. Appx. 298, 299 (2d Cir. 2010). AP1's claims are typical of the claims of the Class because AP1 purchased Agnico common stock on the New York Stock Exchange at prices that were artificially inflated by the Defendants' alleged misconduct and was harmed thereby when the truth was revealed. ECF No. 21, at 6-7; *see In re ShengdaTech, Inc.*, 11 Civ. 1918 (TPG), 2011 U.S. Dist. LEXIS 141695, at *10 (S.D.N.Y. Dec. 6, 2011) (finding typicality where plaintiff's claim "arises from the same events and is pursued under the same legal theories as the claims of all class members"). Moreover, AP1's claims are not subject to any unique defenses that are not applicable to the members of the Class as a whole.

AP1 also satisfies the adequacy requirement of Rule 23 of the Federal Rules of Civil Procedure. AP1 is a sophisticated institutional investor with a significant financial stake in the

litigation and with the resources and skills to vigorously prosecute the Action for the benefit of the Class. ECF No. 21, at 7-8. Specifically, AP1 is one of Sweden's largest pension funds with over $32.5 billion in assets under management and dedicated resources to prosecute this Action. Institutional investors like AP1 are the paradigmatic type of Lead Plaintiff envisioned by Congress in enacting the PSLRA. *See* S. Rep. No. 104-98, at *10-11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 689-90 (1995), ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'"); H.R. Conf. Rep. No. 104-369, at *28, (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Moreover, courts in this District favor the appointment of sophisticated institutional investors like AP1 over individual investors because institutional investors are ideally suited to prevent lawyer-driven litigation and to ensure the vigorous prosecution of the Class' claims. *See, e.g., Jolly Roger Offshore Fund*, 2007 U.S. Dist. LEXIS 60437, at *4 (explaining that the PSLRA was enacted to prevent lawyer-driven litigation by encouraging institutional investors with significant financial interests to serve as Lead Plaintiff and select and supervise class counsel); *Glauser*, 236 F.R.D. at 188 (appointing as Lead Plaintiff "a sophisticated institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation").

AP1, in particular, also has experience overseeing the prosecution of complex federal securities litigation as well as supervising the actions of counsel, including Bernstein Litowitz. Indeed, other courts handling PSLRA actions have recognized that AP1 satisfies the requirements

8

of Rule 23 of the Federal Rules of Civil Procedure. For example, the U.S. District Court for the Northern District of California appointed AP1 as a Co-Lead Plaintiff in the *In re SunPower Corp. Securities Litigation*, 09-cv-05473 (N.D. Cal.), and sustained substantially all of the plaintiffs' Exchange Act claims.

In further support of its adequacy, AP1 also selected counsel – the law firm of Bernstein Litowitz – with the requisite skills, experience, and competence to prosecute the Action vigorously and efficiently in the best interests of the Class. *See* ECF No. 21 at 8-9. AP1, in particular, has substantial experience supervising the actions of its chosen counsel here. Indeed, AP1 retained Bernstein Litowitz to serve as Co-Lead Counsel for the Class in the *SunPower* litigation. Accordingly, there can be no doubt that AP1 satisfies the adequacy requirement of Rule 23.

To overcome the strong presumption in favor of appointing AP1 as Lead Plaintiff, the PSLRA requires "proof" that AP1 is either inadequate or atypical to serve as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists here, and therefore, AP1 should be appointed Lead Plaintiff in the Action.

## **CONCLUSION**

For the above reasons, AP1 respectfully requests that the Court appoint AP1 as Lead Plaintiff, approve AP1's selection of Bernstein Litowitz to serve as Lead Counsel for the Class, consolidate all related actions, deny all other competing motions, and grant such other relief as the Court may deem just and proper.

DATED:  January 23, 2012
        New York, New York

9

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**


By: _____/s/ Gerald H. Silk_____
       Gerald H. Silk (GS-4565)
       Avi Josefson (AJ-3532)
       Laurence J. Hasson (LH-5834)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444
jerry@blbglaw.com
avi@blbglaw.com
laurenceh@blbglaw.com

*Counsel for Första AP-Fonden and Proposed
Lead Counsel for the Class*

10